IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| MICHAEL MONROE GROOMS, | ) | |
| | ) | |
| Petitioner, | ) | CR No. 3:09-1174-CMC |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the court on petition of Michael Monroe Grooms ("Grooms") for a writ of error *corum nobis*. Grooms seeks to vacate his conviction for conspiracy to violate the Animal Welfare Act ("AWA") in violation of 18 U.S.C. § 371 ("Count One") and for aiding and abetting an unlawful animal fighting venture in violation of 7 U.S.C. § 2156(a)(1) and 18 U.S.C. § 2 ("Count Three").

Grooms' conviction was founded on his conditional guilty plea, entered April 28, 2010, through which Grooms sought to preserve his right to appeal three pre-trial rulings. The critical ruling for purposes of this order was the court's determination that, to obtain a conviction, the Government need only establish that the particular "animal fighting venture" on which the charges were founded had a *de minimis* impact on interstate commerce. Grooms and several Co-Defendants had argued, unsuccessfully, that the Government was required to establish that the particular "animal fighting venture" on which the charges were founded had a *substantial,* rather than a *de minimis*, impact on interstate commerce ("*De Minimis* Argument").

Grooms argues that he is entitled to a writ of error *corum nobis* vacating his conviction because the attorney who represented him in the criminal proceeding was ineffective in two respects.

1

First, despite filing an appeal and advancing the two other preserved arguments, the attorney failed to advance the *De Minimis* Argument on appeal. Second, Grooms argues that his attorney erred in advising Grooms that the *De Minimis* Argument could be preserved despite his guilty plea. The second argument is based on language in the Fourth Circuit opinion denying Grooms' appeal and assumes the issue was not, in fact, properly preserved. *See United States v. Gibert*, 677 F.3d 613, 627 (4th Cir. 2012) (denying appeal filed by Grooms and four Co-Defendants).

For the reasons set forth below, the court finds that neither allegation of ineffective assistance of counsel is well founded. This finding is fatal to Grooms' petition for issuance of a writ of error *corum nobis* because he cannot show the existence of an error of the most fundamental character. Grooms' petition is, therefore, denied.[1]

## STANDARDS

### I.      Writ of Error *Corum Nobis*

As the Fourth Circuit Court of Appeals explained in *United States v. Akinsade*, 686 F.3d 248 (4th Cir. 2012):

> As a remedy of last resort, the writ of error coram nobis is granted only where an error is "of the most fundamental character" and there exists no other available remedy. . . . The writ is narrowly limited to "'extraordinary' cases presenting circumstances compelling its use 'to achieve justice.'" . . . Thus, the writ provides relief in cases where the error "rendered the proceeding itself irregular and invalid." . . . A petitioner seeking this relief must show that "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character."

*Id.* at 252 (internal citations omitted).

---

[1]  For purposes of resolving Grooms' petition, the court has assumed the truth of all factual matter asserted in Grooms' affidavit and has drawn all reasonable inferences in his favor. Because the petition fails even with these favorable assumptions and inferences, it is unnecessary to hold an evidentiary hearing.

Ineffective assistance of counsel constitutes the kind of fundamental error that may subject a conviction to attack through a writ of error coram nobis. *Id.* When the petitioner relies on bad advice of counsel to establish fundamental error, he must show that "counsel's misadvice is an error of the 'most fundamental character' such that relief is required to 'achieve justice.'" *Akinsade*, 686 F.3d at 252-53. To determine whether this standard is satisfied, the court "examine[s] the merits of [petitioner's] ineffective assistance of counsel claim [to determine] whether [petitioner] has been prejudiced." *Id.* at 253. Petitioner's burden in this regard is at least as heavy as in a habeas proceeding. *Id.* at 261 (relying, in dissent, on *United States v. Stoneman*, 870 F.2d 102, 106 (3d Cir. 1989) for proposition "[t]he burden of establishing the requirements for *corum nobis* relief is a very substantial one, described by some jurists as exceeding that of an ordinary habeas petitioner.").

## II. Ineffective Assistance of Counsel

### A. Standard Generally

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence," U.S. Const. amend. VI. To satisfy the Sixth Amendment, assistance of counsel must be effective. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

In order to establish an ineffective assistance of counsel claim, a petitioner seeking relief from conviction generally must show (1) that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "Unless a defendant makes both showings

[substandard performance and prejudice], it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

**Performance.** To satisfy the first (performance) prong of the *Strickland* test, petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," as courts apply a "heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 689-91; *see also McDougall v. Dixon*, 921 F.2d 518, 537-39 (4th Cir. 1990) (reviewing court should not second-guess defense counsel's tactical decisions). Whether counsel's performance was deficient must, moreover, be determined by viewing counsel's actions or decisions in light of all surrounding circumstances at the time the decision was made, not in the artificial light of hindsight. *Id.* at 688-89; *see also Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993) (applying rule).

**Prejudice.** The second prong of the *Strickland* test requires a petitioner to establish prejudice. *E.g.*, *Strickland*, 466 U.S. at 697. If the claim is readily dismissible for a lack of prejudice, the court may dismiss the petition for failure of this prong without determining whether counsel's performance was deficient. *Id.*

**Remedy.** The remedy for ineffective assistance of counsel is to put petitioner back where he would have been had he received the proper advice (or assistance). *See Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012). As explained in *Lafler*, "Sixth Amendment remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests. . . . Thus, a remedy must neutralize the taint of a constitutional violation . . . , while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution." *Id.* at 1388-89 (internal quotation marks and citations omitted).

**B.      Standard with Respect to Guilty Pleas**

A criminal defendant's right to counsel extends to the plea-bargaining and plea process. *See, e.g., Lafler*, 132 S. Ct. 1376; *Hill v. Lockhart,* 474 U.S. 52 (1985). The same two (*Strickland*) prongs apply to a claim of ineffective assistance of counsel at this stage of the proceedings. *E.g., Lafler*, 132 S. Ct. at 1384; *Hill*, 474 U.S. at 58-59.

**Performance.** The Supreme Court has addressed several categories of potentially deficient performance at the plea stage. These include: (1) failing to timely advise defendant of a plea offer resulting in loss of the opportunity to accept the plea, *e.g., Missouri v. Frye*, 132 S. Ct. 1399 (2012); bad advice which causes defendant to reject a plea he otherwise might have accepted, *e.g., Lafler*, 132 S. Ct. at 1384 (noting deficiency of performance was conceded in that case); and (3) bad advice (or failure to advise) which causes defendant to accept a plea he otherwise would have rejected, *e.g.*, *Padilla v. Kentucky*, 559 U.S. 356 (2010) (finding evidence of ineffective assistance sufficient to satisfy the first prong where attorney failed to advise client of a clear adverse immigration consequence); *Hill*, 474 U.S. at 59-60 (declining to decide whether erroneous advice as to parole eligibility could satisfy the first prong because there was an insufficient showing of prejudice as to the second). The particular advice (or failure to advise) challenged must, however, be tested under the deferential reasonableness standard applied in *Strickland*. *E.g.*, *Lafler*, 132 S. Ct. at 1384 (reciting *Strickland* standard but finding it unnecessary to apply the standard in light of the parties' concession that the advice at issue was ineffective).

**Prejudice.** To show prejudice when counsel's deficient performance led to the improvident acceptance of a guilty plea, petitioner "must show that there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to

trial." *Hill*, 474 U.S. at 59; *see also Akinsade*, 686 F.3d at 253 (applying this standard in granting

writ of error *corum nobis*). In contrast, when the deficient performance led to rejection of a plea

deal, petitioner "must show that but for the ineffective advice of counsel there is a reasonable

probability that the plea offer would have been presented to the court . . . , that the court would have

accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have

been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 132 S.

Ct. at 1385; *see also Missouri v. Frye*, 132 S. Ct. at 1409-11 (where plea offer has lapsed or was

rejected because of counsel's deficient performance, petitioner "must demonstrate a reasonable

probability that [he] would have accepted the earlier plea offer had [he] been afforded effective

assistance of counsel" and that "the plea would have been entered without the prosecution cancelling

it or the trial court refusing to accept it").

In determining whether any deficient advice by counsel resulted in prejudice, the court may

consider whether that deficiency was cured by the Rule 11 colloquy. *Akinsade*, 686 F.3d at 253.

This is because "defendant may be unable to show prejudice if at the Rule 11 proceeding the district

court provides an admonishment that corrects the misadvice and the defendant expresses that he

understands the admonishment." *Id.*

**Remedy.** Where ineffective assistance led to *rejection or loss* of a plea deal, a range of

remedies may be appropriate including, for example, requiring the Government to re-offer the plea

deal but leaving discretion whether and to what extent to accept the deal with the trial court. *See*

*Lafler*, 132 S. Ct. at 1388-91. In contrast, where the plea was *accepted* due to ineffective assistance

of counsel, the proper remedy is to vacate the conviction (that is, allow petitioner to withdraw his

plea). *See Akinsade,* 686 F.3d 248 (4th Cir. 2012) (granting writ of error *corum nobis* and vacating

conviction where petitioner established his guilty plea was the result of ineffective assistance of counsel).

### C.　　Standard with Respect to Appeals

A criminal defendant's right to effective assistance of counsel extends to the direct appeal of a criminal conviction. *See*, *e.g.*, *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (*en banc*) (citing *Evitts v. Lucey*, 469 U.S. 387, 396 (1985)). The *Strickland* requirements for proof of deficient performance and prejudice generally apply to claims of ineffective assistance on appeal. *See Bell*, 236 F.3d at 164. An exception applies where counsel has failed to file a notice of appeal, as that failure to perform a ministerial task constitutes *per se* ineffectiveness, entitling the criminal defendant to relief without further showing of prejudice.[2]

**Performance.** There is no similar *per se* rule when the alleged ineffectiveness relates to failure to raise a specific issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 752 (1983) (discussed *infra* this section); *Bell*, 236 F.3d at 164 (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993) for proposition that, on appeal, counsel is accorded a "'presumption that he decided which issues were most likely to afford relief on appeal'"); *see also Smith v. Robbins,* 528 U.S. 259, 285 (2000) (remanding habeas proceeding with directions to evaluate claim that "appellate counsel was ineffective in neglecting to file a merits brief" under *Strickland*, including by requiring petitioner to establish "a reasonable probability" that, but for his attorney's errors, he "would have prevailed

---

[2]　*See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (noting filing notice of appeal is a ministerial matter and court had "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable"); *Pequero v. United States,* 526 U.S. 23, 28 (1999) ("When counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit.").

on his appeal"). This is because "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal, as '[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.'" *Bell*, 236 F.3d at 164 (quoting *Barnes*, 463 U.S. at 752). "Winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy," and "counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims." *Id.* (alteration, citations, and internal quotation marks omitted).     The critical question for purposes of Grooms' petition is whether the court should give the same deference where the issue the attorney failed to advance was an issue preserved for appeal through a Rule 11(a)(2) conditional plea and which the client had not agreed to abandon. A closely related question is answered in the affirmative by a footnote in *Barnes* which notes that, for purpose of its review, the Court assumed "that respondent *insisted* that [his attorney] raise the issues identified, and did not simply accept [his attorney's] decision not to press those issues." *See Barnes*, 463 U.S. at 751 n. 4 (emphasis added).  As explained in *Barnes*, no prior decision by the Supreme Court suggested that criminal defendants had "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Id.* at 751.  In rejecting any "*per se* rule that the client, not the professional advocate, must be allowed to decide what issues are to be pressed," the court noted that such a rule would "seriously undermine[] the ability of counsel to present the client's case in accord with counsel's professional evaluation." *Id.*  It also noted that such a rule would be "contrary to all experience and logic" because "[a] brief that raises every colorable issue

runs the risk of burying good argument . . . in a verbal mound made up of strong and weak contentions." *Id.* at 753; *see also id.* at 754 ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies [prior case law]."[3]

Relying on *Barnes*, the Fourth Circuit has held that, while "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim on direct appeal, . . . it will be difficult to demonstrate that counsel was incompetent" if he failed to do so. *Bell*, 236 F.3d at 164 (internal quotation marks and alteration omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (internal quotation marks omitted).

The court recognizes that the precise issue here, whether the rule in *Barnes* applies to issues preserved through a Rule 11(a)(2) plea, has not been directly addressed by the United States

---

[3] In addition to the Fourth Circuit's 2000 decision in *Bell v. Jarvis*, discussed above, the court has located several other decisions that rely on *Barnes* for the proposition that failure to raise or advance an argument or position requested by the client does not automatically render counsel ineffective. For example, in *United States v. Knox*, 287 F.3d 667 (7th Cir. 2002), the court relied on *Barnes* in noting that, "if a client should express a desire to advance a Rule 11 argument on appeal, counsel would be entitled to make an independent decision. A lawyer may limit appellate arguments to those that in his best judgment would do more good than harm." *Id.*, 287 F.3d at 671 (addressing *Barnes* in context of counsel's motion to withdraw on direct appeal after filing an *Anders* brief). A concurring judge in *United States v. Spielvogel*, 264 Fed. Appx. 823 (11th Cir. 2008), relied on *Barnes* in noting that the district court's grant of relief under 28 U.S.C. § 2255, which allowed the out-of-time direct appeal then before the court, rested on a "misunderstanding that an appellant has a right to have his counsel raise on appeal any issue that the appellant wants." *Id.* at 826 (conceding this commentary was "dicta because the government did not appeal the grant of the out-of-time appeal in the § 2255 proceeding"). Without expressly relying on *Barnes*, the Fourth Circuit applied the same principal to uphold counsel's decision to reject an offer of a mistrial over the client's objection in *United States v Chapman*, 593 F.3d 365 (4th Cir. 2010) (citing *Barnes* but not for this particular point).

Supreme Court, Fourth Circuit, or in any published opinion the court has located. The court has, in fact, found only two unpublished decisions that apply the rule from *Barnes* in the context of an attorney's failure to advance, on appeal, an issue expressly preserved in a Rule 11(a)(2) conditional plea. The more recent case, *Selton v. Direc. of Va. Dept. of Corrections*, 2008 WL 4361051 (E.D. Va. 2008), relied on *Barnes* and *Bell* in rejecting a claim that petitioner's attorney was ineffective in failing to pursue, on appeal, a claim that a seizure and warrantless arrest violated the Fourth Amendment. *Id*. at *6 (addressing petition for relief under Section 2254). The court noted that the issue was preserved by the conditional plea. *Id*. at *2 n.4. In *United States v. DiCesare*, 908 F.2d 978 (table), 1990 WL 99477 (9th Cir. 1990), the court, in *dicta*, indicated that it would apply the rule in *Barnes* to a claim preserved through a conditional guilty plea. *Id*. at *4 (noting appellate counsel "raised numerous other arguments" on appeal and counsel's "decision to raise certain arguments and yet not raise others does not constitute ineffective assistance of counsel" *even if the issue had been preserved through the conditional guilty plea*, which the court found it had not). In both cases, the court applied both prongs of the *Strickland* test, rather than finding *per se* ineffectiveness.

This court agrees that failure to advance an issue preserved for appeal through a conditional plea does not constitute *per se* ineffectiveness of counsel. Instead, whether counsel was ineffective in failing to advance an issue preserved through a conditional guilty plea should be determined by applying *Strickland*'s two pronged test, in light of the standards addressed in *Barnes* and *Bell*.[4]

**Prejudice**. In addition to deficient performance, petitioner must show prejudice (unless

---

[4] This conclusion is consistent with the rationale for the *per se* rule, which turns, at least in part, on the ministerial nature of filing a notice of appeal. *See supra* n. 2. Counsel's actions in selecting and advancing legal arguments on appeal, in contrast, involve the exercise of professional judgment. *See, e.g.*, *Barnes*, 463 U.S. at 752.

circumstances supporting *per se* ineffectiveness apply).  *Smith v. Robbins*, 528 U.S. 259, 288 (2000)

(holding petitioner who challenged his attorney's failure to file a merits brief on appeal must "satisfy

both prongs of the *Strickland* test to prevail on his claim of ineffective assistance of counsel").  The

second prong requires him to show a reasonable probability that, but for his attorney's errors, he

would have prevailed on appeal.  *Id.*, 528 U.S. at 285.[5]

**Remedy.**  If Petitioner successfully establishes both prongs, the proper remedy is to reinstate

his right to appeal, as this is the only remedy "tailored to the injury suffered from the constitutional

violation."  *See Lafler*, 132 S. Ct. at 1388-89 (addressing remedy in context of ineffective advice at

the plea stage); *Rodriquez v. United States*, 395 U.S. 327 (1969) (remanding case in which petitioner

"contended that his retained counsel had fraudulently deprived him of his right to appeal" to district

court "where petitioner should be resentenced so that he may perfect an appeal").

## ARGUMENTS

### I.    Grooms' Opening Memorandum

Grooms argues that he satisfies each of the four requirements for issuance of a writ of error

*corum nobis*.  As to the first requirement, Grooms contends that no more usual remedy is now

available because his probation terminated before the United States Supreme Court denied his

---

[5] *Robbins* is also significant for its citation to and discussion of *Barnes.  Id.* at 288 (noting with approval its holding in *Barnes* "that appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal" and acknowledging that, while *Barnes* does not preclude a *Strickland* claim based on failure to raise an issue on appeal, it does make it "difficult to demonstrate that [appellate] counsel was incompetent.").  The Court also cites with approval a Seventh Circuit decision which held that, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome[.]" *Id.* (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  A footnote to this discussion notes that "[f]ederal judges are, of course, fully capable of assessing prejudice in this area[.]" *Id.* at 766 n.16.

petition for *certiorori*. Dkt. No. 781 at 6. Thus, Grooms was no longer in "custody" when direct review of his conviction ended, eliminating the possibility of relief under Section 2255. Grooms' argument as to the second requirement, that he had valid reasons for not making an earlier challenge, overlaps with his argument as to the first requirement: he asserts that he could not have sought relief under Section 2255 or by writ of error *corum nobis* until his direct appeal was concluded. Grooms also notes that the present petition was filed within the period that would have been allowed for a motion under Section 2255 had he remained in custody, thus suggesting timeliness. *Id.* at 7.[6]

As to the third requirement, Grooms argues that he continues to be adversely affected by his felony conviction due to his loss of certain civil rights such as the right to vote and possess a firearm. He argues that the loss of these rights and related adverse impact of the conviction on his reputation and economic opportunities are sufficient to satisfy the case or controversy requirement. *Id.* at 7.

Finally, as to the fourth requirement, Grooms argues that errors of the most fundamental character rendered the underlying proceeding invalid. *Id.* at 8-10. Specifically, Grooms relies on two alleged deficiencies in his attorney's representation. First, Grooms argues that his attorney deviated from the professional norm by failing, on appeal, to advance all three of the issues preserved through Grooms' conditional plea. In support of this argument, Grooms relies on cases addressing failure to *file* an appeal, arguing that "[t]he failure to complete the client's wishes, as outlined in the reservation of rights, by following through on raising the issue in an appeal is no less offensive than the failure of counsel to file an appeal when directed by the client." *Id.* at 9-10 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *United States v. Embree*, 169 Fed. Appx.

---

[6] Grooms does not address and the court finds it unnecessary to consider whether he had some other means of raising the *De Minimis* Argument on appeal after learning the issue was not advanced in the opening brief.

761, 762 (4th Cir. 2006).[7]

Grooms also argues that his attorney was ineffective at the plea stage by "provid[ing] inaccurate advice . . . on the impact of [Grooms'] acceptance of the interstate nexus element of the offense during his plea colloquy." *Id.* at 10. This argument rests on language in the Fourth Circuit opinion noting that, by pleading guilty, Defendants "acknowledged that the government could prove that the event 'was in or affecting interstate commerce.'" *Id.* (citing *Gibert*, 677 F.3d at 627) (quoted *infra* Prior Proceedings § III).

## II.    Government's Argument

In response, the Government argues that the issue which Grooms claims was abandoned "was briefed as a sub-issue to a greater constitutional challenge." Dkt. No. 784 at 4. The Government asserts that the Court of Appeals "took up" this argument and "found that [it] failed." *Id.* at 3 (referring to court's discussion of an "as-applied" challenge possibly suggested by Appellants' brief). As to the argument that Grooms received inaccurate advice at the plea stage, the Government asserts that Grooms is misreading the Court of Appeals' opinion.

---

[7] Both *Flores-Ortega* (discussed *supra* Standards § II. C.) and *Embree* address motions for relief based on an attorney's failure to consult with the client regarding whether to pursue an appeal. In *Embree*, the Fourth Circuit Court of Appeals reversed a district court's denial of a motion under Section 2255. As in *Flores-Ortega*, the motion alleged that defense counsel was ineffective in failing to consult with the client regarding whether to pursue an appeal. The *Embree* panel remanded the matter with instructions to determine "whether counsel's failure to consult with Embree about an appeal amounted to ineffective assistance." *Id.* at 762. The appellate panel explained that, to obtain relief, the defendant must establish: (1) that "counsel's failure to consult amounted to deficient performance" and (2) that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, [defendant] would have timely appealed." *Id.* (internal quotation marks omitted). Nothing in *Embree* or *Flores-Ortega* addresses counsel's failure to advance specific issues on appeal.

After noting the extraordinary nature of a writ of error *corum nobis* and reciting the four requirements for relief under such a writ, the Government addresses the four requirements, in full, as follows: "Here, petitioner had the remedy of direct appeal available to him and it was properly exercised. For this reason, his motion should be denied." *Id.* at 6.

The court construes the Government's argument as a challenge to the first and fourth requirements for a writ of error *corum nobis*: that is, the court interprets the Government's arguments as challenging the first requirement because Grooms had a more usual remedy available (the right to direct appeal), and the fourth requirement because the appellate briefs raised the *De Minimis* Argument sufficiently to cause the Fourth Circuit to address it as an as-applied challenge.

### III. Grooms' Reply

On reply, Grooms notes that, contrary to the Government's argument, the Court of Appeals specifically observed that Appellants had abandoned the argument that "the government was required to prove . . . that the derbies [underlying the convictions] *substantially* affected interstate commerce." Dkt. No. 785 at 2 (emphasis in original) (citing *Gibert*, 677 F.3d at 617 n.5). Grooms also challenges the Government's suggestion that his preserved *De Minimis* Argument was the same as the as-applied challenge addressed in the decision on appeal. *Id.* at 4. Ultimately, Grooms argues that "the issue was not raised, contrary to Grooms' desires, and contrary to his specific preservation of the challenge in the Plea." *Id.*

With respect to his argument that he received ineffective advice at the plea stage, Grooms argues that the Government fails to address "why [he] did not receive incorrect advice regarding the impact his guilty plea would have upon his preservation of a challenge to the requisite standard of proof regarding the interstate nexus." *Id.* at 4-5. In support of this argument, Grooms characterizes

the appellate decision as holding that, by pleading guilty, he waived his right to make the *De Minimis* Argument. *Id.* at 5.

Noting the Government's failure to challenge his position as to several of the requirements for a writ of error *corum nobis*, Grooms characterizes the Government's response as relying "upon the mistaken belief that Grooms' exercised appellate review of the issue, and was unsuccessful." *Id.* at 7. Grooms concludes that he "was denied [the opportunity to advance the *De Minimis* Argument], because of the mistaken advice of counsel, and now he has no other, more usual remedy." *Id.*

## PRIOR PROCEEDINGS

Because the arguments focus on what was preserved, argued and decided, the court sets out the prior relevant proceedings in some detail.

### I.     Pretrial Conference and Change of Plea

Grooms' plea was conditional and included an express preservation of the *De Minimis* Argument. Whether it was possible to preserve this issue for appeal in light of the factual allegations Grooms was required to admit in order to plead guilty was the subject of substantial discussion during the first portion of the final pretrial conference held on April 28, 2010 (the afternoon before trial was scheduled to begin). *See, e.g.*, Dkt. No. 393 (minute entry, hearing held 2:30 p.m. to 4:21 p.m.); Dkt. No. 662 at 7-8, 16 (hearing transcript). Grooms was present during this portion of the proceeding.

Defendants who wished to enter a change of plea requested and the court granted a break before proceeding. Dkt. No. 662 at 74-75. The break lasted slightly more than an hour, with proceedings recommencing at 5:30 p.m. *Id.*; Dkt. No. 397 (minute entry, hearing held 5:30 p.m. to

6:45 p.m.). Following the break, the Rule 11(a)(2) conditions as well as the Government's proffer of evidence in support of the charges were placed on the record. Dkt. No. 662 at 101 (defense summary of issues preserved for appeal by conditional plea including argument "Government must prove that the activity [forming the basis for the charges] had a substantial [e]ffect on interstate commerce and not just a de minimis [e]ffect which defendants believe would not satisfy the constitutional requirements"); *id.* at 109 (court's confirmation of Defendants' understanding that they were reserving specified issues for appeal); *id.* at 116-18 (Government's summary of evidence demonstrating an impact on interstate commerce).

Following the Government's summation of evidence, the following exchange occurred between the court, Grooms' attorney, and Grooms:

> THE COURT: Okay, and as far as the interstate commerce, do you dispute the Government's contention that this was in and had an [e]ffect on interstate or foreign commerce?
>
> MR, MCCULLOCH: Your Honor, he concedes I suppose, your Honor. And I certainly don't want to discuss the plea – I'm not sure how to advise him of this. He – He, like everyone else who has appeared before you on entry of pleas, would say that they did not intend to affect interstate commerce, in fact took steps to try and avoid that. But we are here today conceding that the Goverment has evidence, some of which would not apply to him. . . . So, your honor, I'm not trying to confuse the issue as to any extent, but not sure how to advise him to answer the question I guess . . . .
>
> THE COURT: Well, the reason that I phrased it the way I did was, do you dispute the Government's evidence, the fact that it exists, as to – that they presented as to the issue of in or affecting commerce.
>
> MR. MCCULLOCH: I think stated that way he wouldn't –
>
> DEFENDANT [GROOMS]: Right. No, Ma'am.
>
> THE COURT: I think it would probably be better if you –
>
> DEFENDANT [GROOMS]: I don't dispute that.

16

THE COURT: Okay.

DEFENDANT [GROOMS]: I'm in agreement with you on that.

Dkt. No. 662 at 120-22.

Following this exchange, Grooms went on to explain that, while he had no recollection of joining the Game Breeder's Association, he could not unequivocally state that he had not done so and conceded that he might be listed as a member in some association documents. *Id.* at 122-23. The court then asked Grooms whether he understood everything that had been explained. Grooms stated he did and, when asked how he wished to plead, responded that he wished to plead guilty. *Id.* at 123.

## II.    Arguments on Appeal

Grooms' appeal was consolidated with the appeals of four Co-Defendants (collectively Appellants), all but one of whom had also preserved the *De Minimis* Argument for appeal. *See* Appeal No. 10-4848, Dkt. No. 62 at 13 n.4 (noting one Appellant had not entered a conditional plea).[8] The joint opening brief on appeal includes several statements alerting the Court of Appeals to Appellants' preservation of the *De Minimis* Argument. For example, their "Statement of the Case" includes the following background information:

> Appellants also requested that the jury instructions reflect the Government's burden of proving that the "animal fighting venture[s]" targeted under the Act **substantially** affected interstate commerce. . . . [T]he District Court denied Appellants['] motions and issued an order stating that it would instruct the jury that the [G]overnment must only prove that the activity had a *de minimis* effect on interstate commerce. . . . Based upon the rulings of the District Court, [four of the five] Appellants entered Rule 11(a)(2) conditional guilty pleas[.]

*Id.* at 10 (emphasis in original). The same information is repeated in Appellants' "Statement of

---

[8] Page numbers refer to the page number in the ECF header, not the appellate brief's internal numbering system.

Facts." *Id.* at 13. The Statement of Facts also lists the three issues preserved for appeal, the third of which is summarized as an argument that "the [G]overnment is required to prove that the activity had a substantial effect on interstate commerce." *Id.* at 14.

A footnote under the portion of Appellants' "Summary of Argument" dedicated to their facial Commerce Clause challenge, states: "The conspiracy counts . . . *may* raise additional constitutional questions to the extent the Government has not, or cannot, establish that the counts target conduct (and specifically acts in furtherance) that substantially affect interstate commerce." *Id.* at 17 n.6 (emphasis added). A statement on the following page refers to the level of proof needed in an individual case as follows: "[T]he record below, including the Government's Bill of Particulars, shows at most that the alleged conduct involved minor implements that moved in interstate commerce, . . . and that individuals may have discussed the activity in interstate communications . . . . That is not enough to pass constitutional scrutiny[.]" *Id.* at 18.

Despite these references to the *De Minimis* Argument in the preliminary sections of their opening brief, Appellants did not directly advance this argument as a reason for reversal of their convictions. Instead, Appellants limited their actual argument to their other two preserved issues: (1) whether Congress exceeded its authority under the Commerce Clause when it enacted the relevant provisions of the Animal Welfare Act (*id.* at 15-19, 21-46 ) ("Commerce Clause Challenge"), and (2) whether the Government was required to prove that Appellants *knew* that the animal fighting venture they engaged in was in or affecting interstate or foreign commerce" (*id.* at 19-20, 46-50) (emphasis added) ("Scienter Requirement").[9]

---

[9] As the number of pages dedicated to each argument reveals, the primary focus of the appellate brief was on the Commerce Clause Challenge (31 pages), rather than the Scienter

(continued...)

Appellants began their Commerce Clause Challenge by distinguishing between the proof necessary in an individual case from that necessary to support congressional reliance on the Commerce Clause:

> The District Court's analysis of Appellants' Commerce Clause challenge to § 2156(a) treats the "inclusion of a jurisdictional element in the offense" as sufficient to justify federal criminalization of local conduct, so long as there was an impact on interstate commerce, no matter how slight. . . . The District Court's constitutional analysis conflated two distinct inquiries. The fact that Congress included a jurisdictional hook in § 2156 is of course relevant to the statute's constitutionality, . . . but is by no means the end of the inquiry. *The jurisdictional hook is instead the beginning of the inquiry whether Congress appropriately "limit[ed] [the statute's] reach to a discrete set of [offenses]" that substantially affect interstate commerce.*

*Id.* at 23-24 (emphasis added).

Building on this distinction, Appellants noted that the United States Supreme Court has repeatedly held that "where a general regulatory statute bears a substantial relation to [interstate] commerce, *the de minimis character of individual instances arising under that statute is of no consequence*." *Id.* at 25 (citing four Supreme Court decisions) (emphasis added). This rule of law and the same cases were then relied on to argue that "the *de minimis* nexus of any individual case will ***not*** suffice to justify federal statutory regulation of the entire class" when the Government fails to "establish that the general regulatory statute substantially affects interstate commerce." *Id.* at 25 (emphasis in original).

Summing up these arguments, Appellants explained as follows:

> Had the District Court correctly distinguished the *minimal nexus required to establish jurisdiction over an individual prosecution* from the substantial nexus required to establish § 2156(a)'s validity under the Commerce Clause, it would have recognized that the Government's Bill of Particulars and other evidence of the charged offenses' impact on interstate commerce, though *perhaps sufficient to show*

---

[9](...continued)
Requirement (7 pages).

> *the kind of de minimis nexus required by the jurisdictional hook*, was in no way sufficient to show that § 2156(a) regulates a class of activities that, even in the aggregate, "substantially affect" interstate commerce in the manner Supreme Court and circuit precedents require.

*Id.* at 26-27 (footnote omitted, emphasis added).

## III. Fourth Circuit Decision

The Fourth Circuit denied Grooms' and his Co-Appellants' appeal in a published opinion: *United States v. Gibert*, 677 F.3d 613 (4th Cir. 2012). The court rejected Appellants' facial challenge under the Commerce Clause based, in part, on substantial legislative history addressing the impact of cockfighting on interstate commerce and the inclusion of a jurisdictional element in the offense. *Id.* at 618-27. The court acknowledged that Appellants had raised the *De Minimis* Argument in their Rule 11 Addendum, but noted that the issue had not been pursued on appeal. *Id.* at 618 n.5 (referring to Rule 11 Addendum and noting that it raised the issue of whether "the government was required to prove as an element of the offense that the derbies *substantially* affected interstate commerce[,]" although Appellants "ha[d] not raised that issue on appeal.") (emphasis added).

After rejecting the Commerce Clause Challenge, the court addressed Appellant's possible continued pursuit of an "as-applied" challenge as follows:

> We note that we have considered Gibert's[10] arguments as presenting solely a facial challenge to the constitutionality of the animal fighting statute. We accord this construction to Gibert's arguments in view of the manner in which Gibert presented the Commerce Clause challenge in the briefs filed with this Court. However, to the extent that Gibert's brief suggests an as-applied challenge to the statute, such a challenge likewise fails. As we held in *United States v. Williams*, 342 F.3d 350 (4th Cir. 2003), *the relevant question for purposes of a Commerce Clause analysis is not whether one particular offense has an impact on interstate commerce*, but whether the class of acts proscribed has such an impact. *Id.* at 355; *see also*

---

[10] The court refers to Appellants collectively as "Gibert" throughout the opinion. *Id.* at 616.

*United States v. Gould*, 568 F.3d 459, 475 (4th Cir. 2009) (citing *Williams* for same proposition).

As the Supreme Court explained in [*Gonzales v. Raich*, 545 U.S. 1 (2005)], Congress has the "power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce. . . . *[W]hen a general regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence."* 545 U.S. at 17 (citation and quotation marks omitted); *see also United States v. Forrest*, 429 F.3d 73, 79 (4th Cir. 2005) (applying *Raich* and holding that the defendant's "constitutional challenge, which rests entirely on the asserted de minimis economic effect of his own activities, must fail") (internal citation omitted).

Finally, we observe that if the cockfighting activities in which Gibert participated were wholly an intrastate activity, the government would be unable to establish one of the elements of the offense, namely, that the event be "in or affecting interstate or foreign commerce." 7 U.S.C. § 2156(g)(1). However, by his guilty plea to the offense, Gibert acknowledged that the government could prove that the event "was in or affecting interstate commerce." [footnote 13] *See United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993) (holding that a voluntary and intelligent plea of guilty "is an admission of all the elements of a formal criminal charge") (quoting *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). Therefore, any as-applied constitutional challenge to the animal fighting statute based on the manner in which the cockfighting operation was conducted necessarily fails.

[footnote 13] We observe that Gibert explicitly indicated in the plea agreement that the government was required to prove as an element of the offense that the animal fighting venture was "in or affecting interstate commerce."

*Id.* at 627 (emphasis added).

## DISCUSSION

## I. First through Third Requirements for a Writ of Error *Corum Nobis*

For purposes of this order, the court assumes that Grooms has established the first three requirements for a writ of error *corum nobis*. In making this assumption, the court notes that the Government's only specific challenge to Grooms' proof of the four requirements for a writ of error *corum nobis* consists of its two-pronged argument that Grooms "[1] had the remedy of direct appeal available to him and [2] it was properly exercised." Dkt. No. 784 at 6.

The first part of the Government's argument suggests that a petitioner may not seek relief through the writ of error *corum nobis* if he had an opportunity to pursue a direct appeal. This confuses a criminal defendant's right to a direct appeal with his right to challenge his conviction if defense counsel is ineffective in pursuing the appeal. While the standard for relief for ineffective assistance of counsel where an appeal is filed may be high, it is not non-existent as this argument seems to suggest. *See supra* Standard § II. C. (*citing*, *e.g.*, *Robbins*, 528 U.S. at 288; *Barnes*, 463 U.S. at 752-54; *Bell*, 236 F.3d at 164).

The second part of the Government's argument, that the right to appeal was "properly exercised[,]" implicates only the fourth requirement for a writ of error *corum nobis*: whether there was a fundamental error due to ineffective assistance of counsel. Thus, this part of the Government's argument does not address the first through third requirements.

In light of this record, the court assumes for purposes of this order that Grooms satisfies the first three requirements for entry of a writ of error *corum nobis*. The court need not make any final determination as to whether these requirements are satisfied because, for reasons explained below, Grooms has not established that there was a fundamental error in the proceeding.

## II.    Fourth Element:  Fundamental Error

Grooms argues that there was fundamental error because his counsel was ineffective in two particulars. First, Grooms argues that his attorney was *per se* ineffective because he failed to advance the *De Minimis* Argument on appeal. Second, Grooms argues that his attorney was ineffective at the plea stage because he failed to advise Grooms that his guilty plea might preclude reliance on the *De Minimis* Argument on appeal. These arguments, and a possible hybrid of the two (that counsel was ineffective at the plea stage because he failed to advise Grooms that counsel might

22

elect not to advance the *De Minimis* Argument on Appeal), are addressed below.

## A. Failure to Advance *De Minimis* Argument on Appeal.

Despite making several references to preservation of the *De Minimis* Argument in their opening brief, Appellants largely abandoned this argument on appeal. *See* Prior Proceedings § II; Appellate Dkt. No. 62 at 26-27; *Gibert*, 677 F.3d at 618 n.5. They did not, in any event, advance the argument directly.[11] While this may leave some doubt as to whether the issue was entirely abandoned, the court will assume for present purposes that it was. The court also assumes that Grooms' attorney abandoned this argument despite Grooms' express desire to advance the issue and without further consultation before the opening appellate brief was filed.

The court does not, however, accept Grooms' legal premise that such a failure constitutes *per se* ineffective assistance of counsel.[12] To the contrary, unlike failure to file an appeal when requested by the client, failure to advance a specific issue on appeal does not constitute *per se* ineffective assistance of counsel. *See, e.g., Jones v. Barnes*, 463 U.S. 745 (1983) (discussed *supra* Standards § II.C.). This is true even when that failure is contrary to the client's express request and even when that request relates to an issue preserved for appeal through a Rule 11(a)(2) conditional plea. *Id.,* 463 U.S. at 751 n.4; *supra* Standards § II.C.

Grooms must, therefore, show both that his attorney's failure to advance the *De Minimis* Argument fell below the objective standard of reasonableness and that there is a reasonable

---

[11] Appellants' references to their preservation of the *De Minimis* Argument were, however, sufficient to prompt the Court of Appeals to discuss (and reject) any "as-applied" challenge that might have been suggested by Appellants' briefs. *Gibert*, 677 F.3d at 627.

[12] Grooms relies solely on two cases which address *per se* ineffectiveness (where counsel fails to file a notice of appeal). *See supra* Argument § I, n. 7 (discussing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), and *United States v. Embree*, 169 Fed. Appx. 761, 762 (4th Cir. 2006)).

probability that the outcome of the appeal would have been different but for the failure to advance this argument. *See, e.g., Robbins,* 528 U.S. at 285; *Barnes*, 463 U.S. at 751-54l; *Bell*, 236 F.3d at 164. For the reasons set forth below, the court finds insufficient evidence to support either prong of the *Strickland* test for ineffective assistance of counsel.

First, it is clear from their opening appellate brief that Grooms' attorney (and the other attorneys who signed the joint brief) made a tactical decision to give the *De Minimis* Argument no more than passing mention, allowing them to focus on what they viewed as the stronger two arguments. This decision appears, in part, to have been motivated by a recognition that at least four United States Supreme Court decisions and one Fourth Circuit decision effectively foreclosed the *De Minimis* Argument. Appellate Dkt. No. 62 at 25-26 (discussing *United States v. Williams,* 342 F.3d 350, 354 (4th Cir. 2003) and four Supreme Court decisions). It also appears to have been motivated by a view that their facial challenge would be strengthened if they could distinguish the impact necessary to establish the jurisdictional element of the offenses from the standard necessary to support congressional action under the Commerce Clause. *See id.* at 26 (arguing the district court failed to "correctly distinguish[] the minimal nexus required to establish jurisdiction over an individual prosecution from the substantial nexus required to establish § 2156(a)'s validity under the Commerce Clause").

Grooms has failed to proffer any argument that his attorney's decision as to which issues to pursue was unreasonable or outside the "wide range of professional assistance" within which the courts defer to an attorney's professional judgment. *Strickland*, 466 U.S. at 689-91. Neither has he presented argument that the "ignored issues were clearly stronger than those presented," which is necessary to overcome the "presumption of effective assistance of counsel." *Bell*, 236 F.3d at 164.

Even if Grooms offered argument on these points, his arguments would fail in light of the substantial authority suggesting near certain rejection of the *De Minimis* Argument (much of which is cited in Appellants' opening brief) and the Court of Appeals' discussion and rejection of any as-applied challenge that might have been suggested by Appellants. *See Gibert*, 677 F.3d at 627 (noting that any such argument was foreclosed by prior decisions including *Raich*, in which the Court held that "when a general regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence."). Whether or not the as-applied challenge referenced by the Court of Appeals was *identical* to the preserved *De Minimis* Argument, the court's discussion of this issue and the cases cited in Appellants' opening brief establish that the *De Minimis* Argument did not have a reasonable probability of success.[13] It was, therefore, reasonable for Grooms' attorney to abandon this argument in favor of arguments he believed were more likely to succeed (though, they too, failed on appeal).

The court, therefore, finds that Grooms' counsel did not did not fall below an objective standard of reasonableness in light of the prevailing professional norms when he failed to pursue the *De Minimis* Argument on appeal. Thus, Grooms has failed to establish the first (performance) prong of the test for ineffective assistance of counsel.

The court further finds that, even if counsel's failure to advance this argument was a deviation from the prevailing professional norm, Grooms has failed establish a reasonable probability that the result of the proceeding would have been different had counsel advanced the *De Minimis* Argument on appeal. Grooms has not, in fact, offered any argument on this point. Were

---

[13] This court sees little if any distinction between what the Court of Appeals referred to as an as-applied challenge, and the preserved *De Minimis* Argument.

Grooms to do so, his argument would be required to overcome the strong inference that the Fourth Circuit would have rejected the *De Minimis* Argument in light of its treatment of any as-applied challenge which might have been suggested by Appellants' briefs.

Finally, the court notes that, were Grooms to succeed in his argument that his attorney was ineffective because he failed to advance the *De Minimis* Argument on appeal, the relief would be to reinstate Grooms' right to appeal. This is not the relief Grooms seeks, which is limited to having his conviction vacated (through withdrawal of his guilty plea). *See* Dkt. No. 781-1 ¶ 17 (Grooms averring that "I understand that by pursuing this Petition, I am seeking to vacate my convictions."); *id.* ¶ 18 ("I understand that by pursuing this Petition, if I am successful, I may face a trial on these charges and could be subject to incarceration upon conviction."); *id.* ¶ 19 ("Being advised of the potential consequence of a successful Petition, I strongly desire to pursue these convictions being vacated, and have advised my counsel of the same.").

### B. Failure to Provide Proper Advice at Plea Stage

Grooms also argues that his attorney was ineffective at the plea stage because he failed to warn Grooms that entry of the plea might preclude Grooms from advancing the *De Minimis* Argument on appeal. This argument is founded on the following language from the Court of Appeals' decision, which accompanied its rejection of any as-applied challenge on the merits:

> Finally, we observe that if the cockfighting activities in which Gibert participated were *wholly* an intrastate activity, the government would be unable to establish one of the elements of the offense, namely, that the event be "in or affecting interstate or foreign commerce." 7 U.S.C. § 2156(g)(1). *However, by his guilty plea to the offense, Gibert acknowledged that the government could prove that the event "was in or affecting interstate commerce."* . . . *Therefore, any as-applied constitutional challenge to the animal fighting statute based on the manner in which the cockfighting operation was conducted necessarily fails.*

*Gibert*, 677 F.3d at 627 (emphasis added).

Read in context, the language on which Grooms relies does not suggest that, by pleading guilty, Grooms necessarily lost the opportunity to raise the *De Minimis* Argument. It, instead, suggests that the Court of Appeals found that any as-applied challenge (which the court finds equivalent to the *De Minimis* Argument) failed in light of Appellants' factual admissions and concession that the Government could establish at least a *de minimis* connection to interstate commerce. It follows that Grooms has not established that his attorney gave incorrect advice, assuming counsel advised Grooms that the issue could be preserved with certainty despite Grooms' guilty plea and the concerns expressed by the court regarding whether the issue could be preserved for appeal.[14]

While the court need not rely on this point, it also notes that Grooms was present during the first portion of the pretrial conference during which the court raised concerns regarding whether the

---

[14] Grooms does not expressly allege that his attorney advised him the issue could be preserved for appeal *with certainty*, despite concerns noted by the court and discussed at length during the first portion of the final pretrial conference. Grooms most relevant averments are as follows:

> 10.    I would not have entered the conditional plea if I would not have been able to preserve my rights to challenge the "minimal or slight" language in the jury charge as I felt this was the primary or most substantial ground to appeal.

> 11.    I made this fact known to Mr. McCulloch on several occasions.
> * * *
> 13.    Prior to filing of the briefs in my appeal, I was not advised that the "minimal or slight" language would not be challenged.
> * * *
> 16.    I would not have entered the conditional plea if I had been told, or had any reason to believe, that the "minimal or slight" language would not be challenged on appeal.

Dkt. No. 781-1. The court, nonetheless, assumes for purposes of this order that Grooms' attorney either incorrectly advised him as to the certainty with which the issue could be preserved for appeal or erred by failing to explain that there was a possibility the issue could not be preserved.

*De Minimis* Argument could be preserved for appeal. The court allowed an hour-long break, during which Grooms could have raised any concerns with his attorney before deciding whether to plead guilty. When the court began to inquire about this element, Grooms' attorney jumped in to express some concern, prompting the court to explain: "Well, the reason that I phrased it the way I did was, do you dispute the Government's evidence, the fact that it exists, , as to – that they presented as to the issue of in or affecting commerce." At that point, Grooms' counsel began to speak, but was interrupted by Grooms who, three times, indicated agreement with the court's inquiry.[15] By this and his specific admission of guilt, Grooms did not contest the specific factual allegations recited by the Government or that those allegations supported at least a finding of a *de minimis* effect on interstate commerce.

Considered in full, the discussion for which Grooms was present during the first part of the final pretrial conference and his own repeated admission arguably defeat any claim that he admitted guilt based on incorrect or inadequate legal advice regarding whether the *De Minimis* Argument could, with certainty, be preserved for appeal. The court need not, however, determine this issue with finality given that Grooms has not established that the issue was not, in fact, preserved for appeal.

### C.     Hybrid Argument

While it is not clear from the briefs, it is possible that Grooms is arguing that his attorney

---

[15]  The full exchange is quoted above under Prior Proceedings § I. The most critical portion of the exchange is the court's statement of the question to be posed as whether Grooms "dispute[s] the Government's evidence, the fact that it exists as to – that they presented as to the issue of in or affecting commerce." Grooms' attorney began to respond: "I think stated that way he wouldn't –[.]" Grooms then interjected: "Right. No Ma'am." He then confirmed with the following to statements: "I don't dispute that" and "I'm in agreement with you on that."

was ineffective *at the plea stage* because he failed to advise Grooms of the possibility the *De Minimis* Argument *would be abandoned on appeal*.[16] Any such argument is rejected as an improper backdoor attack on counsel's failure to advance the argument on appeal, which argument fails for reasons discussed above regarding ineffectiveness on appeal.[17]

## CONCLUSION

For the reasons set forth above, the court denies Grooms' petition for writ of error *corum nobis*.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
SENIOR UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
October 23, 2013

---

[16]  This hybrid argument is suggested both by some language in Grooms' opening memorandum and in the relief sought: vacating the conviction rather than reinstating the appeal.

[17]  The court has not found and Grooms has not directed the court to any case finding ineffective assistance of counsel based on counsel's failure to advise the client that the attorney might exercise his professional judgment in future proceedings, including, for example, by abandoning issues or arguments which are not likely to succeed on appeal and may, in fact, detract from stronger arguments.